COTTRELL, Appellant, vs. SHEPHERD, imp., Respondent.

*January 9 — January 30, 1894.*

*Limitation of actions: Part payment by grantee of mortgaged land.*

Payments by a grantee of mortgaged land who, as part of the consideration, assumed and agreed to pay the mortgage, cannot be imputed to the mortgagor so as to remove the bar of the statute of limitations as against him.

APPEAL from the Circuit Court for *Outagamie* County.

Action to foreclose a mortgage. The facts are stated in the opinion. The plaintiff excepted to the refusal of the trial court to order judgment for any deficiency against the defendant *Henry Shepherd*, and appealed from the judgment of foreclosure, which does not contain such an order.

For the appellant the cause was submitted on the brief of *Gerrit T. Thorn.* He contended, *inter alia,* that the mortgagee could regard both *Shepherd* and his grantee, who assumed the debt, as principal debtors; that *Shepherd* by his acts had made his grantee his agent to make payments; and that payments made by the grantee were the same as if made by *Shepherd*·himself. *National Bank v. Cotton,* 53 Wis. 31; *Marshall v. Holmes,* 68 id. 555; *Clement v. Clement,* 69 id. 599; *Corbett v. Waterman,* 11 Iowa, 86; *Cross v. Allen,* 141 U. S. 528; *Tuttle v. Armstead,* 53 Conn. 175; *Calvo v. Davies,* 73 N. Y. 215; *Rubens v. Prindle,* 44 Barb. 336; *Waters v. Hubbard,* 44 Conn. 340; *Burr v. Beers,* 24

N. Y. 178; *Mechanics' Sav. Bank v. Goff*, 13 R. I. 516; *Flagg v. Geltmacher*, 98 Ill. 293; *Torrey v. Bank*, 9 Paige, 649.

For the respondent there was a brief by *Goldberg & Hoxie*, and oral argument by *Benj. M. Goldberg*.

ORTON, C. J. This is an action to foreclose a mortgage executed by the defendant *Henry Shepherd* and Margaret, his wife, to the plaintiff, on certain premises, on the 19th day of October, 1877, to secure a note given by and to the same persons, of $250, at the same time, with ten per cent. interest, payable the 1st day of June, 1883. The action was commenced August 9, 1890. On the 29th day of June, 1878, the said defendants sold and deeded the mortgaged premises to one Louis Roussau in consideration of $310, and said deed contained a covenant against incumbrances, except the said mortgage, and it was agreed verbally that Roussau was to pay said mortgage as a part of said consideration, and Roussau paid to the defendants $60, and on the mortgage $50, at the time of the sale, and has paid since the interest on the note to July 7, 1888, and $50 more on the principal in 1881. The balance due on the note and mortgage, at the time of the judgment, of principal and interest, was $237, for which judgment was rendered, as also for $40 solicitor's fees. The said Roussau was made defendant, but made no answer, and his equity of redemption, as well as that of *Shepherd* and wife, was foreclosed. The plaintiff asked judgment for any deficiency after the sale against the said *Henry Shepherd*, but did not ask for any such personal judgment against said Roussau. The defendant *Shepherd* answered, setting up the statute of limitations on the note as a bar to any such personal judgment against him for any such deficiency, and, this having appeared, no judgment for the same was rendered or ordered against him.

These are the material facts. The error assigned is that

the court held that the statute was a bar to any personal judgment against *Shepherd*, and refused to embrace in the judgment of foreclosure any such order.    The learned counsel of the appellant contends that the payments of interest and part of the principal of the note within the period of limitation, by Roussau, the grantee, should be held to have been made by the said *Shepherd*, and that they removed the bar of the statute as to him, because Roussau occupied the relation of a joint debtor with, or agent of, *Shepherd*. This is the only question in the case.

The authorities cited by the learned counsel are not in point with this case, but are claimed to be the same in principle, as showing by analogy that Roussau, as such grantee subject to the mortgage and promising to pay the same, was a joint debtor or agent of *Shepherd*, or that his relation to him was in principle the same.    There was no personal judgment asked against Roussau, and he did not answer; but the fact that he was such grantee of the Shepherds, and promised to pay the mortgage, and had made such payments on the mortgage, came into the case as matters of evidence, in order to show that the statute had not run as to *Shepherd* by reason of said payments.

We do not think such payments by Roussau can have such effect.    The following reasons appear to be sufficient for so holding:  (1) Roussau was not a joint debtor, or jointly liable, with *Shepherd*.    It is true, he promised *Shepherd* to pay the note, and became liable to pay it; but the plaintiff, as mortgagee, was not a party to such promise, and has not yet accepted the benefit of it, and has not sought to hold him liable on it.    It has never become a *novation*.    The plaintiff is not bound to pursue his remedy against Roussau.    (2) Roussau did not make the payments for the benefit of *Shepherd*, but for his own benefit, to protect his equity of redemption or interest in the premises. *Shepherd* had no interest in the premises any longer to pro-

tect.   It was immaterial to him whether Roussau paid the
note or not, as far as the mortgage was concerned, for
Roussau had bought the premises subject to the mortgage,
and had promised to pay it, and he must pay it or lose his
land.   *Shepherd* had no interest in it, except to protect
himself against any deficiency after the sale of the prem-
ises.   *Shepherd* made the note, and is liable to pay it.   He
is the only party to whom the plaintiff looks for payment.
He *ignores* Roussau as a party to the note, or as liable to
pay it.   Roussau made some payments on the mortgage,
and the plaintiff received them, as he was bound to do, for
Roussau stood then in the place of the mortgagor owning
the equity of redemption.   He made them, however, for
himself alone and for his own protection.   He did not do
it as the agent of *Shepherd* in any sense, but was acting for
himself alone.   He did not profess to be acting for any one
except himself, and it is not shown that *Shepherd* knew at
the time that he was making the payments, or that he noti-
fied him of it.   It would appear to be very unreasonable,
as well as unjust, to impute these payments to the defend-
ant *Shepherd* to have the legal effect of a new promise on
his part to pay the note within the period of limitation.
Roussau was not liable on the note, and could not be sued
upon it.   He could only be held liable, if at all, by the fore-
closure of the mortgage.   Then, by what authority could
he make an acknowledgment for the defendant *Shepherd*
that the note was still a subsisting indebtedness against
him.   The plaintiff's relations to the note and to *Shepherd*
as the maker of it were not changed in the least by Rous-
sau's purchasing the land subject to the mortgage, nor was
*Shepherd's* liability to the plaintiff on the note changed or
affected by it.   The plaintiff and defendant *Shepherd* occu-
pied the same relations towards each other as they did be-
fore.   I can conceive of no process of reasoning by which
these payments by Roussau can be made to be, in law, pay-

ments made by the defendant *Shepherd*, and I have not been able to find any case in the reports as authority for it.

This question is new in this court, and I think it could not have often arisen anywhere. The case of *Trustees v. Smith*, 52 Conn. 434, seems to be closely in point. That was a mortgage on certain tracts of land to secure a note for $2,850 as the purchase money for the land. The mortgagor sold the premises subject to the mortgage, and the grantees promised to pay it as a part of the consideration. The grantees had made payments of interest on the note within the period of limitation. The maker of the note set up the statute as a bar. He had never made any payments on the note himself, unless such payments by the grantees could be imputed to him, and it was held that such payments did not remove the bar of the statute or operate as a new undertaking or promise. Chief Justice PARK, who wrote the opinion, said: "The defendant was directly and personally liable on the note, and when he conveyed the land mortgaged to his grantees on their assumption and promise to pay the note as a part consideration of the purchase the transaction altered in no respect whatever the liability of the defendant on the note. Neither did it increase or diminish the remedies of the plaintiffs. They could pursue the defendant on the note, or the lands in the hands of the grantees, just as well as before. . . . Their liabilities are separate and distinct. Neither party could do anything to increase the liability of the other. How could the grantees, by any act of theirs, acknowledge that the mortgage debt was a subsisting indebtedness, so as to subject the defendant to a new liability upon it, when they themselves were not liable on the note? We think the grantees could do nothing by word or deed to remove the bar of the statute of limitations so far as the defendant is concerned." We think this decision is supported by the

clearest reasons, and any decision to the contrary would be without and against reason.

In *Harlock v. Ashberry*, 18 Ch. Div. 229, the tenant of the mortgagor, in possession of the mortgaged premises, was required by the mortgagee to attorn and pay the rent to him, and the tenant did pay five pounds sterling on the rent, and it was received as so much payment on the mortgage. This payment was set up as having removed the bar of the statute as against the mortgagor. The case was tried before Mr. Justice Fry, and he held the payment had such effect, but on appeal (19 Ch. Div. 539) the Master of the Rolls, Sir George Jessel, and the Lords Justices, Sir William Baliol Brett, and Sir John Holker, held the other way,— that it did not remove the bar of the statute as to the mortgagor. The reasons given were that the mortgagor could not prevent the payment, however much he might have disapproved of it at the time; and that it was a payment of rent, and as rent, and not as a payment on the mortgage for the benefit of the mortgagor, either as principal or interest.

Inasmuch as such payments, to remove the bar of the statute, must have the effect of an acknowledgment of the debt or a new promise, they should be made by some person who had the right to acknowledge the debt or to make the new promise,— either the mortgagor or his authorized agent. In application to this case, the grantee had the right to make payments for himself to save his land, but had no right to make such payments for and on behalf of the mortgagor, as an acknowledgment of his debt or as a new promise on his part. Conversely: " A mortgagor who sells the land subject to the mortgage cannot, by his subsequent acknowledgment or payments of interest, toll the statute as to his grantees." *Lord v. Morris*, 18 Cal. 482–490; *Zoll v. Carnahan*, 83 Mo. 35; *Schmucker v. Sibert*, 18

Kan. 104; *Day v. Baldwin*, 34 Iowa, 380; *Newbould v. Smith*, 33 Ch. Div. 127; 13 Am. & Eng. Ency. of Law, 761. In such cases it seems clear that neither the mortgagor nor the grantee, by acknowledgment or payments, can remove the bar of the statute as to the other.

The ruling of the circuit court, refusing to order a personal judgment against the defendant *Shepherd* for any deficiency after sale of the mortgaged premises, was not erroneous, and the judgment without such order is correct.

*By the Court.*— The judgment of the circuit court is affirmed.