# REGAN, Appellant, v. WILLIAMS.

### In Banc, January 21, 1905.

1. **MORTGAGE NOTE: Sale of Land: Principal and Surety: Joint Promisors.** The assumption of a mortgage debt by the vendee of land converts the vendee into the principal of the note secured by the mortgage, and the vendor into a surety. And thereafter the owner of the note who knows the arrangement is bound to recognize the vendor and vendee in these respective capacities. In such case the vendor and vendee are not joint promisors.

2. ⸻: ⸻: ⸻: **Limitations.** A payment of interest by the vendee in such case, while the note is yet alive, will not stop the running of the statute of limitations as to the vendor, because after the assumption of the debt by the vendee the vendor (the maker of the note) is no longer a principal, but a surety, and they are not thereafter joint obligors.

3. ⸻: **Extension: How Far Binding.** An agreement to extend the time of payment of a note then due upon the payment of the interest and a part of the principal, is without consideration and not binding; so that, the creditor may, if he chooses, immediately press for payment despite his agreement to extend.

4. ⸻: **Foreclosure: Credit on Note: Limitations.** A credit on the note by the trustee of the proceeds realized from a foreclosure sale of the mortgaged property does not stop the running of the statute of limitations in favor of the original payor of the note. Such a payment is not a voluntary one on his part, but is so applied by the trustee as a legal duty. (Disapproving Bender v. Markle, 37 Mo. App. 234.)

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1) (a) Where a mortgagor sells the mortgaged property, and the grantee assumes and agrees to pay the mortgage debt, the grantee becomes the principal debtor and the grantor becomes the surety with all the consequences flowing from the relationship of surety.

Wayman v. Jones, 58 Mo. App. 313; Bank v. Klock, 58 Mo. App. 335; Bank v. Wood, 56 Mo. App. 214; Nelson v. Brown, 140 Mo. 589; Pratt v. Conway, 148 Mo. 291. (b) And the mortgagee is bound, after he receives notice of grantee's assumption of the debt, to recognize the relation of principal and surety between grantor and grantee. Nelson v. Brown, 140 Mo. 589; Wayman v. Jones, 58 Mo. App. 313. This proposition is necessarily true, for the reason that if the mortgagee should release the grantee, or the property, or grant a valid extension of time of payment, without the mortgagor's consent, these acts or either of them would operate to discharge the mortgagor. Nelson v. Brown, 140 Mo. 589. And these same rules apply to subsequent grantees of the original grantee. Nelson v. Brown, 140 Mo. 580; Cockfield v. Farley, 21 La. Ann. 521; Blackburn University v. Weer, 21 Ill. App. 29; Levy v. Police Jury, 24 La. Ann. 292; Hollister v. York, 59 Vt. 1. (2) By the transactions in this case defendant Williams, his grantee, the Scott Investment Company, and its grantee, Carey, all became bound for the payment of the note sued on. And each and all could have been sued on said note and forced to pay the same. So a payment by either one of the three would interrupt the running of the statute of limitations as to the others. Craig v. Callaway, 12 Mo. 94; McClurg v. Howard, 45 Mo. 365; Block v. Dorman, 51 Mo. 31; Lawrence Co. v. Dunkel, 35 Mo. 295; Bennett v. McCause, 65 Mo. 194; Callaway Co. v. Craig, 9 Mo. 846; Zervis v. Unnerstall, 29 Mo. App. 475; Harris v. Odeal, 39 Mo. App. 270; Kemble v. Logan, 79 Mo. App. 253; Cockfield v. Farley, 21 La. Ann. 521; Burgur v. Durbin, 22 Barb. 68; Sutherlin v. Roberts, 4 Or. 378; Town of Huntington v. Chesmore, 60 Vt. 566; Blackburn University v. Weer, 21 Ill. App. 29; Hollister v. York, 59 Vt. 1; Collier v. His Creditors, 12 Rob. (La.) 398; Levy v. Police Jury, 24 La. Ann. 292; Wyatt v. Hodson, 8 Bing. 309; Hunt v. Bridgham, 2 Pick. 581 (13 Am.

Dec. 458); Sigourney v. Drury, 14 Pick. 353; Zent v. Hart, 8 Pa. St. 337; Johnson v. Smith, 13 Vt. 353; Glick v. Crist, 37 Ohio St. 388; Schindel v. Gates, 24 Am. Rep. 526 (26 Md. 604); Woonsocket Sav. Ins. v. Ballou, 16 R. I. 351 (1 L. R. A. 555). (3) It was not necessary for Williams to make the payment himself. If made by any one having authority to pay or bound to pay, or out of the proceeds of property pledged as collateral, or mortgaged to secure the debt, with authority in the mortgagee or trustee to sell and apply on the debt, such payments, if made before the statute of limitations has run or while the debt is alive, will interrupt the running of the statute, or rather give it a new starting point, and such payments are binding on Williams, the original debtor. Bender v. Markle, 37 Mo. App. 234; Harris v. Odeal, 39 Mo. App. 270; Bank v. Rowland, 1 Col. App. 468; Cockfield v. Farley, 21 La. Ann. 521; Levy v. Police Jury, 24 La. Ann. 292; Hollister v. York, 59 Vt. 1; Town of Huntington v. Chesmore, 60 Vt. 566; Sutherlin v. Roberts, 4 Or. 378; Blackburn University v. Weer, 21 Ill. App. 29; Randolph, Commercial Paper, par. 1629, p. 727; Burleigh v. Scott, 8 B. & C. 36; Pease v. Hurst, 10 B. & C. 122; Bealy v. Greensdale, 2 Cromp & J. 61; Buffington v. Chase, 152 Mass. 534 (10 L. R. A. 123); Porter v. Blood, 5 Pick. 54; Whipple v. Blackington, 97 Mass. 476; Butters v. Price, 115 Mass. 578; Brown v. Tyler, 8 Gray 135; Hancock v. Ins. Co., 114 Mass. 155; Haven v. Hathaway, 20 Me. 345. (4) The payment of interest by the principal in a note will prevent the running of the statute of limitations as to a surety. A payment by one of two makers of a note is binding on the other, the payment by one partner after dissolution of the partnership prevents the running of the statute as to other partner and the payment by any one bound to pay interrupts the running of the statute as to all others bound to pay, provided such payments are made before the debt is barred by the statute. Authorities

cited under points 2 and 3; Sutherlin v. Roberts, 4 Or. 378. (5) The conveyance of the land by Williams and the assumptions and agreements by the different grantees to assume and pay the note constituted them agents of Williams with authority and directions from him to make the payments. Burger v. Durbin, 22 Barb. 68; Town of Huntington v. Chesmore, 60 Vt. 566; Blackburn University v. Weer, 21 Ill. App. 29; Collier v. Creditors, 12 Rob. (La.) 398; Bank v. Rowland, 1 Colo. App. 468; Whipple v. Blackington, 97 Mass. 476; Bender v. Markle, 37 Mo. App. 234; Porter v. Blood, 5 Pick. 53; Taylor v. Foster, 132 Mass. 30; Somberger v. Lee, 14 Neb. 193; Haven v. Hathaway, 20 Me. 345; Levy v. Police Jury, 24 La. Ann. 292; Cockfield v. Farley, 21 La. Ann. 521; Hollister v. York, 59 Vt. 1.

(6) (a) All the authorities agree that where a payment is made by the agent of the debtor, it is binding on him. All agree that where a debtor puts up collateral as a pledge with authority to sell and apply the proceeds, such payment is binding; or where he turns over a note as collateral with authority to collect and apply on the note, such payment is binding on the debtor; that any payment by the authority or direction of the debtor is binding on him and will interrupt the running of the statute of limitations. By the deed of trust in this case Williams specially authorized and directed Goffe, the trustee, to sell the land and pay the net proceeds on the note under certain conditions. Goffe in 1894 complied with the authority and directions of Williams, did what Williams specially directed him to do, and, as a result, paid over $1,900 on the note for Williams' benefit, the note at that time being a live and subsisting obligation against Williams, and that payment was a payment by Williams by his agent and interrupted the running of the statute of limitations. Bender v. Markle, 37 Mo. App. 234; Cockfield v. Farley, 21 La. Ann. 521; Burger v. Durbin, 22 Barb. 68; Town of Huntington v. Chesmore, 60 Vt. 566;

Blackburn University v. Weer, 21 Ill. App. 29; Hollister v. York, 59 Vt. 1. (b) The trustee, Goffe, was Williams' agent for the purpose of selling the land and paying the proceeds on the note, and would have been liable to Williams if he had failed to make the payment on the note. Sherwood v. Saxton, 63 Mo. 78. (7) The payment of interest on a bond by the principal obligor interrupts the running of the statutes of limitations as to the surety thereon. Lawrence Co. v. Dunkle, 35 Mo. 395; Whittaker v. Rice, 9 Minn. 13; Ellicott v. Nichols (7 Gill 85), 48 Am. Dec. 546; Schindell v. Gates, 46 Md. 604; Hunt v. Bridgman, 19 Mass. 581; Sigourney v. Drury, 31 Mass. 387; Zent's Excrs. v. Hearst, 8 Pa. 337; Perkins v. Barstowe, 6 R. I. 505; Dickson v. Gourdin, 26 S. C. 391; Glasscock v. Hamilton, 62 Tex. 143.

*Edward J. White* for respondent.

That the partial payments by the defendant's grantees should toll the statute, as to him, is counter to both reason and authority. All the cases in this State hold that the legal status of such grantees, after assumption of the mortgage debt by them, was that of principal debtor, as to such debt. Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291; Wayman v. Jones, 58 Mo. App. 313. It is elementary that the partial payment, to toll the statute, must be one that constitutes a "recognition of the debt and a willingness to pay it." 1 Wood, Lim., sec. 99, p. 278. When making part payments on their own debt, the defendant's grantees certainly could not, by the wildest judicial construction, be held to recognize the debt and signify a willingness on the defendant's part to pay it. They made payments on their own debt as such, and not on any debt of the defendant. A principal on a note, in making payment, could not be said to be paying the note for his surety or guarantor, but for

himself and to hold that he was doing such act for another would be doing violence to his contract and the reasonable inference that would attach to one's actions in the ordinary affairs of life. The grantees had agreed to pay the debt, as their debt, because they owed it; Williams was only liable upon the contingency of their failure to pay, and being only secondarily liable, they were not paying his debt but their own, in making payments, and could not, without authority from him, even if the debt had been his primarily instead of theirs, bind him by any express or implied promise to pay the balance remaining after the application of the credits made by them. To imply an agency to make such payments, as against the defendants, on the part of his grantees, instead of to hold that they did what they were legally liable to do, would be not only creating an agency where none in fact existed, but affixing an unwarranted and unreasonable effect to an ordinary and reasonable transaction. The obligation of the grantees of the debt was separate and distinct from that of the defendant, and they made such payments upon their own obligation and not that of the defendant, which only matured, on their failure to meet theirs. Suppose, instead of only paying a part of the debt, they had satisfied it in full, would it be contended that they did so for the defendant? If they had continued doing as they commenced to do, there would have been no liability on defendant's part, as they were satisfying the debt as their own obligation, and each payment by them *pro tanto* discharged the defendant. No act on their part, disclosed by the record, could be held to bind the defendant. Corbyn v. Brokmeyer, 84 Mo. App. 652. That the obligation of the grantees was a separate, independent obligation from that of the defendant, has been squarely held in this court, in the case of Zoll v. Carnahan, 83 Mo. 43.

PER CURIAM.—This cause comes to this court on a certificate by the St. Louis Court of Appeals that the opinion of said court herein is in conflict with an opinion by the Kansas City Court of Appeals in Bender v. Markle, 37 Mo. App. 234.

The statement and opinion by GOODE, J., of the St. Louis Court of Appeals is as follows:

"March 21, 1887, the respondent executed to Timothy Regan, the father of. the appellant, a promissory note for $4,000, due two years after date and bearing compound interest at the rate of eight per cent. The note was given for part of the purchase price of some land in Springfield, and to secure it a deed of trust was executed and delivered on the same day, by the defendant and wife, to Charles H. Goffe, trustee for said Timothy Regan, beneficiary. It contained the usual covenants and powers to the trustee to sell in case of default, 'and receive the proceeds of the sale, out of which should be paid, first, the costs and expenses of this trust and next all amounts expended for taxes and other purposes, and next the amount that may remain unpaid on said note and the interest thereon.' November 29, 1887, the defendant and wife conveyed the real estate covered by said deed of trust to the Scott Investment Company, which, with the full consent and approval of the payee, Regan, assumed and agreed to pay the note as part of the purchase price of the land. Interest was paid at the end of each year to March 21, 1890, on which date not only the interest, but $1,000 of the principal, was paid by the Scott Investment Company. The following indorsement was put on the note: 'Paid on the within, $1,000 as principal in part, and $320 as interest to March 21, 1890, and time on balance of note extended one year.' September 4, 1890, the Scott Investment Company conveyed the land to A. W. Carey, who likewise assumed and agreed to pay the encumbrance on it. Interest was paid to March 21, 1892. Afterwards, defaults oc-

curred, and on the seventeenth day of May, 1894, the trustee, Goffe, at the request of the beneficiary, sold the property under the deed of trust for $2,000, and after deducting the expenses of the sale credited the remainder, $1,934.80, on the note. The present plaintiff was the owner and holder of the instrument when this action was commenced, but is affected by whatever equities exist against the payee. The defenses are that Williams was released by extensions given by Timothy Regan, and that the debt was barred by the statute of limitations. There is testimony tending to prove that the Scott Investment Company purchased the property with an understanding with Regan that the time of payment should be extended, and would not have purchased without it. The trial court made a special finding of the facts, in which it found against the view that there was an agreement as to the extension of time when Williams sold to the Scott Investment Company. It also found that the defendant had neither made, nor caused to be made, any payment on the note except that the trustee, under the authority of the deed of trust, credited thereon the amount received at the sale. This finding is supported by the evidence. The action was instituted on the fourth day of May, 1900.

"I. The sale of the land by the original mortgagor, Williams, to the Scott Investment Company, and the assumption of the encumbrance by the latter, converted said company into the principal debtor with reference to the encumbrance, and the defendant into a surety. [Wayman v. Jones, 58 Mo. App. 313; Nelson v. Brown, 140 Mo. 580; Pratt v. Conway, 148 Mo. 291.] Timothy Regan, who then held the note and knew all about the arrangement, was bound thereafter to recognize said parties in those capacities. [Nelson v. Brown, supra.]

"We must be controlled by the finding of the lower court that there was no agreement for an extension of the time of payment, either between Williams and the Scott Investment Company, or between the latter and

Timothy Regan, at the time the company purchased the land. When the extension was entered on the note, the entire principal and one year's interest were due. The accrued interest and $1,000 of the principal were paid. It is the law in this State that a contract like that, for the extension of the time of payment, is without consideration and not binding, so that the creditor may, if he chooses, immediately press for payment despite his agreement to extend; that therefore a surety is not released by such a transaction between the maker and payee. [Brown v. Kirk, 20 Mo. App. 524; Owings v. McKenzie, 133 Mo. 323.] In some jurisdictions the rule is otherwise where there is not simply an agreement to forbear proceedings to collect, but a formal, executed stipulation to postpone the maturity of the instrument. [Benson v. Phipps, 87 Tex. 1. c. 580, and many cases cited.] The decisions of the court to which we owe fealty must be followed and we approve the ruling of the learned trial judge that the extension did not discharge the defendant as surety.

"II. In reply to the defense that the statute of limitations had run against the note before this action was begun, plaintiff asserts that the payments of interest by the Scott Investment Company and Carey to March 21, 1892, prevented the running of the statute, not only in favor of said parties but of the defendant as well. The ruling that payment by a principal will suspend the statute as to a surety, is invoked as applicable, because by operation of law, the subsequent grantees of the land covered by the deed of trust became principals and the defendant a surety. The proposition contended for is sound enough, generally speaking. [Craig v. Callaway Co. Ct., 12 Mo. 94; McClurg v. Howard, 45 Mo. 365; Block v. Dorman, 51 Mo. 31; Vernon County v. Stewart, 64 Mo. 408; Bennett v. McCanse, 65 Mo. 194.] These payments were made while the note was still alive, and the rule is well established that payments made by the principal, or by one of sev-

eral joint obligors, before the debt is barred, will stop the statute. But the reason why a payment by the principal stops it as to a surety, is not because one is principal and the other surety, but because both are usually joint promisors; that is, the surety is affected by the act of the principal in his capacity as a joint promisor. The idea is that persons who jointly bind themselves are all liable to the promisee by virtue of their original agreement, so that performance or part performance by one is the act of all. [Sigourney v. Drury, 14 Pick. 387; Brandram v. Wharton, 1 Bar. & Ald. 463; Atkins v. Tredgold, 2 Bar. & Cres. 23.] The principle only applies where the payment was made by one originally liable. [Sigourney v. Drury, supra.]

" Whether or not the statute ceased to run in favor of the defendant when the payments were made by the subsequent grantees, depends, then, on whether he can be considered a joint promisor with them. Undoubtedly he was not. They were not parties to the note when it was made, and only became obligated to pay it by subsequent contracts between themselves and the maker, Williams. Their responsibility, far from resting on a promise by them given in conjunction with Williams to the payee, Regan, rests exclusively on the promises they made afterwards to assume the debt. In no sense were they joint obligors with him. Their promises neither coincided with his in point of time, nor were made with the same person, nor based on the same consideration. They were separate and distinct undertakings. [Maddox v. Duncan, 143 Mo. l. c. 621; Corbyn v. Brokmeyer, 84 Mo. App. 649.] Those cases hold that a payment made by one whose promise is collateral, does not interrupt the statute as to the original obligor. The precedents are all against this contention of the appellant. [Trustee of Old Almshouse v. Smith, 52 Conn. 434; Cotterell v. Shepherd, 86 Wis. 649; Harlock v. Ashberry, 19 Ch. D. 539; Home

Life Insurance Co. v. Elwell, 111 Mich. 689; Princeton Savings Bank v. Martin, 53 N. J. Eq. 463-465; Underwood v. Patrick, 94 Fed. 468.] Zoll v. Carnahan, 83 Mo. 35, is in point by analogy. We hold that the payments of interest made by the Scott Investment Company and by Carey did not prevent the statute from running in favor of the defendant.

"III. It is insisted by the appellant, in the second place, that the case is taken out of the statute by the credit Goffe, the trustee, put on the note, of the proceeds arising from the foreclosure sale of the land. The trustee, it is claimed, was the agent of both the mortgagor and mortgagee, and for certain purposes he was; not for that one, however. It was his duty to protect the interests of both parties in the performance of his office, and he was liable to either for damages resulting from his misfeasance. [Sherwood v. Saxton, 63 Mo. 78.] We do not find in the deed of trust any clause authorizing the trustee to enter a credit on the note of the proceeds of sale in case of foreclosure, but such an act was in the scope of his legal authority. To say that he was empowered by Williams to make such a credit on the latter's behalf, or that it was contemplated or expected he should do so when the deed of trust was executed, would be, in our estimation, a very strained deduction. Notes secured by deeds of trust are commonly paid and the trustee not called on to act; often the land passes from the mortgagor before the debt falls due, under an agreement by the purchaser to assume and pay the encumbrance, as happened here. Williams had no control over the trustee, whose agency, as far as it went, was irrevocable. It is going too far then, we think, to hold the trustee first named, or his possible successors in the persons of different sheriffs, was or were empowered or appointed by the mortgagor to bind him at any subsequent date by crediting the proceeds of a foreclosure on the note. As has well been said, it is not the indorsement of a credit

but the payment that operates as a renewal of a promise and removes the bar of the statute of limitations. [Curtis v. Nash, 88 Me. 476.] The party relying on a payment to stop the statute must not only establish that it was made, but made by the authority of the defendant. [Murdock v. Waterman, 27 L. R. A. 418; Bender v. Blessing, 31 N. Y. Supp. 48.] 'Part payment does not take a debt out of the statute unless made under such circumstances as to warrant the inference that the debtor thereby recognized the debt and signified his willingness to pay it.' [1 Wood on Limitations (3 Ed.), sec. 99.] The payments must be made by or with the consent of the payor. [Gardner v. Early, 78 Mo. App. 346; Phillips v. Mahan, 52 Mo. 197.] If credits are entered by the holder, without the knowledge or consent of the payor, they are ineffective to check the statute. [Goddard v. Williamson's Admr., 72 Mo. 131; Loewer v. Haug, 20 Mo. App. 163.] The prima facie showing, from the fact that the credits were entered when it was against Regan's interest to do so, is overcome by the positive proof that the defendant had nothing to do with them and knew nothing about them.

"The credit made by the trustee, instead of being the result of a payment directed by Williams expressly or by necessary implication, was made *in invitum*. It was a collection enforced by foreclosing the security.

"The question we are considering has been several times passed on by the courts and we believe, with one exception, the judgment was that such an application by the trustee or mortgagee of the money obtained by sale did not stop the statute. It was so held by this court in Leach v. Asher, 20 Mo. App. 656. The Kansas City Court of Appeals ruled differently in Bender v. Markle, 37 Mo. App. 234, without noticing the previous case. These opposing decisions were commented on by the Supreme Court of Nebraska in a controversy as to the effect of such a credit by the trustee in a deed

of trust on lands in Missouri.   The proposition is
ably discussed in that opinion and the view of this court
adopted on the ground, 'that such payment was not a
voluntary one on the part of Carr (the mortgagor) but
one made *in invitum* and by operation of law.' [Mof-
fitt v. Carr, 48 Neb. 403.]   To the same purport is the
impressive voice of the Supreme Court of Massachu-
setts in a recent case.   The opinion says:

   " 'The ground upon which a part payment is held
to take a case out of the statute is, that such payment
is a voluntary admission by the debtor that the debt is
then due, which raises a new promise by implication
to pay it or the balance.   To have this effect, it must
be such an acknowledgment as reasonably leads to
the inference that the debtor intended to renew his
promise of payment.   [Roscoe v. Hale, 7 Gray 274;
Stoddard v. Doane, 7 Gray 387; Richardson v. Thomas,
13 Gray 381.]   In the case at bar, the plaintiff executed
a mortgage in which he gave to the mortgagee a power
to sell the estate and to appropriate the proceeds to the
payment of the mortgage debt.   But this cannot fairly
be construed as an authority to the mortgagee to make
a new promise on behalf of the mortgagor to pay the
debt, so as to avoid the statute of limitations.   At the
time of the sale, the plaintiff had no interest in the
property.   He had no right to the proceeds of the sale.
The money which, it is claimed, was applied in part
payment of the note, was not his money.   It would be
applied by law to the extinguishment *pro tanto* of his
debt, but the application was not under his control and
involved no action of his mind.   It does not appear that
he had any knowledge of the sale.   It is absurd to say
that the facts in this case would fairly lead to the in-
ference that the plaintiff intended to renew his promise
to pay the note.' [Campbell v. Baldwin, 130 Mass.
199.]

   "It is noteworthy that the law in Massachusetts
and Nebraska is that a sale by a pledgee of collateral

security and the application of the money in part payment of the debt will toll the statute. But the Supreme Courts of those States did not think such instances analogous to this one, which they likened rather to transactions in which credits are given for dividends declared by an assignee, that are always held not to stop the course of the statute in favor of the debtor. [Marienthal v. Mosler, 16 Ohio 566; Stoddard v. Doane, 7 Gray 387; Pickett v. King, 34 Barb. 193; Roosevelt v. Mark, 6 John. Ch. 266; Light's Estate, 136 Pa. St. 211.] Involuntary payments are, we believe, usually held not to take the case out of the statute. [Whitney v. Chambers, 17 Neb. 90; Roscoe v. Hale, 7 Gray 274; Stoddard v. Doane, 7 Gray 387; Battle v. Battle, 21 S. E. 177.]

"In Hughes v. Boone, 114 N. C. 54, it was ruled that a partial payment of a judgment made on execution would not interrupt the running of the statute. It is held that the credit is applied by the assignee as a legal duty and not by direction of the assignor. So it is of the credit by a trustee or mortgagee. The proposition that such an act by either affects the statute as to the mortgagor, is incompatible with the principle on which payments are given suspensive effect. This principle, as stated, is that the payments, whether made by the mortgagor in person or by his accredited deputy, are a recognition by him of his debt and a tacit promise to discharge it. The reasoning which deduces such a conclusion from the credit made by the trustee or mortgagee is extremely artificial, in fact opposed to common knowledge. Is it consistent with the ordinary conduct of men to think that Williams desired or empowered Goffe to bind him to pay his note by the credit which the latter endorsed?

"The decisions have gone quite far enough towards defeating the purpose of the limitation law. [Woonsocket Inst. v. Ballou, 1 L. R. A. 555.] The inhospitable reception accorded by the courts to the two

great legislative policies embodied in the statutes of limitations and of frauds has often provoked regret, and a disposition more favorable to them has supervened. We have no inclination to encroach further on the limitation law or create fresh exceptions to it, and rule, therefore, that the credit made by Goffe does not impair the defense of the statute, and affirm the judgment.''

The foregoing opinion of the St. Louis Court of Appeals correctly announces the law upon the facts of this case and is in all things approved and adopted as the opinion of this court, and the views expressed by the Kansas City Court of Appeals in Bender v. Markle, 37 Mo. App. 234, in conflict therewith, are disapproved and will no longer be followed.

For the reasons assigned by the St. Louis Court of Appeals, the judgment of the circuit court is affirmed.

All concur except Judge LAMM, who was not a member of the court when the cause was submitted.