Weygandt, C. J.
 

 The single question requiring ■consideration by this court relates to the personal liability of Mrs. Johnson and Miss Siegentlialer. It -arises by reason of the defense of the statute of limitations as set forth in Section 11221, General Code, which provides that an “action upon a specialty or an .agreement, contract or promise in writing shall be brought within fifteen years after the cause thereof •accrued.”
 
 Cleveland Trust Co.
 
 v.
 
 Elbrecht,
 
 137 Ohio St., 358, 30 N. E. (2d), 433. Within the fifteen-year period payments were made by other assumers but not by Mrs. Johnson or Miss Siegentlialer (on her own behalf) ; and both contend that the statute was not thereby tolled as to them. This view was rejected by the trial court but was accepted by the Court of Appeals.
 

 Counsel agree that the precise question here involved is one of first impression so far as the decisions of this ■court are concerned.
 

 A general study of test and case law discloses a ■conflict as to whether the running of the statute of limitations is interrupted as to the mortgagor when an ■acknowledgment or part payment of the mortgage indebtedness is made by an assuming grantee. Discussions of the subject usually conclude with the observation that according to the weight of authority no act ■of a subsequent grantee who has assumed.a mortgage debt will have the effect of tolling the statute as to the mortgagor. 34 American Jurisprudence, 281, Section
 
 *317
 
 361; 37 American Jurisprudence, 388, Section 1112; 17 Ruling Case Law, 944, Section 307; 37 Corpus Juris, 1165, Section 644; 18 A. L. R., 1033; 80 A. L. R., 1434; ■5 Tiffany on Real Property (3 Ed.), 420, Section 1447; 17 Minnesota Law Review, 97; Ann. Cas. 1914C, 1111.
 

 In the Restatement of the Law of Security, at page 318, Section 120, appears the following view:
 

 “Partial payments or new promises made to the ■creditor by either surety or principal do not toll the running of the statute in favor of the other against the creditor. * * *
 

 “The principal and the surety each has his own obligation to the creditor. When the time for performance by each has arrived, the Statute of Limitations begins to run in his favor. Acts by either party which extend the period as to him do not of themselves have that effect as to the other.”
 

 In the case of
 
 Trent
 
 v.
 
 Johnson,
 
 185 Ark., 288, 47 S. W. (2d), 12, 80 A. L. R., 1431, the court reached its conclusion as follows:
 

 “On the question as to whether an acknowledgment of the continuance of the mortgage debt by partial payment made on it by the grantee of mortgaged premises who has assumed and agreed to pay the debt interrupts the running of the statute of limitations as against the liability of the mortgagor, the authorities are in conflict. The weight of authority, however, is to the effect that no act of a grantee who has assumed a mortgage will toll the statute of limitations as to the mortgagor. 17 R. C. L'., pp. 916, 917; 18 A. L. R., note Ilia, p. 1033;
 
 Fitzgerald
 
 v.
 
 Flanagan,
 
 155 Iowa, 217, 135 N. W., 738, Ann. Cas. 1914C, 1104;
 
 Regan
 
 v.
 
 Williams,
 
 185 Mo., 620, 84 S. W., 959, 105 Am. St. Rep., 600; Ann. Cas. 1914C, 1113, note;
 
 Cottrell
 
 v.
 
 Shepherd,
 
 86 Wis., 649, 57 N. W., 983, 39 Am. St. Rep., 919. We are of the opinion that the better reason supports the view taken in the authorities above cited. The grantee is personally liable to the mortgagee because of his assumption
 
 *318
 
 and agreement to pay the debt secured by the mortgage, the payments are made by the grantee for his own. benefit and not as the agent of the grantor, as their liabilities are separate and distinct.
 
 Old Alms-House
 
 v.
 
 Smith,
 
 52 Conn., 434. Therefore, the grantee cannot,. by any act of his, impute to his grantor the effect of' his act or subject him to a new liability.”
 

 In a more recent decision in the case of
 
 Verrill
 
 v.
 
 Weinstein,
 
 135 Me., 126, 190 A., 634, the court made the following observation:
 

 “The plaintiff contends that in making such payments the promisor is acting in effect as agent of the mortgagor, and that accordingly the effect of the payments is to interrupt the running of the statute of limitations in the same manner as if they had been made-by the maker of the mortgage note. Such claim misconceives the theory on which the liability of the promisor is based. His obligation is not on the note, not as agent of the mortgagor, but to pay a debt of his own.. * * * The deed poll establishes his liability as a grantee, the note is evidence of the amount due, but the-action is not in covenant nor on the note. It is implied assumpsit to enforce the independent obligation of thepromisor.
 

 “Under such circumstances, the payments to the-holders of the mortgage note did not extend the time-of the running of the statute of limitations with respect to this defendant. This conclusion is supported by the overwhelming weight of authority.”
 

 In the case of
 
 Regan
 
 v.
 
 Williams,
 
 185 Mo., 620, 84 S. W., 959, 105 Am. St. Rep., 600, the court rationalized as follows:
 

 “The.reason why a payment by the principal stops it as to a surety is not because one is principal and the other surety, but because both are usually joint promisors; that is, the surety is affected by the act of the principal in his capacity as a joint promisor. The idea is that persons who jointly bind themselves are
 
 *319
 
 all liable to the promisee by virtue of their original agreement, so that performance or part performance by one is the act of all. * * * The principle only .applies where the payment was made by one originally liable. * * * Whether or not the statute ceased to run in favor of the defendant, when the payments were made by the subsequent grantees, depends, then, on ■whether he can be considered a joint promisor with them. Undoubtedly he was not. They were not parties to the note when it was made, and only became •obligated to pay it by subsequent contracts between themselves and the maker, Williams. Their responsibility, far from resting on a promise by them given in conjunction with Williams to the payee, Regan, rests •exclusively on the promises they made afterwards to .assume the debt. In no sense were they joint obligors with him. Their promises neither coincided with his in point of time, nor were made with the same person, ■nor based on the same consideration.”
 

 Different reasoning in reaching the same conclusion ■was employed in the case of
 
 Trustees of Old Alms-House Farm of New Haven
 
 v.
 
 Smith,
 
 52 Conn., 434, in which the following statement appears:
 

 “If the defendant himself had paid the interest during the time, the payments would have had such effect, for each payment would be a voluntary admission by him that the debt was then subsisting, which would raise by implication a new7 promise to pay it. But the payments of interest by the successive owners of the •equity of redemption were on their own account, in •order to keep alive the equity of redemption, of which they had become the purchasers; for if they failed to •pay interest their equitable estate would become liable to be extinguished by foreclosure. Such payments therefore, being made on their own account and for their own benefit, had no legal significance as regards the maker of the note, and effected no change whatever in the legal relations between the plaintiff and the de
 
 *320
 
 fendant. They were not the agents of the defendant, in making the payments, neither did they profess to-be acting for him. How then can the payments be regarded as made by the defendant, when they were-neither made by him personally, nor by any authorized agent in his behalf? * * * The defendant was liable on the note. The grantees were liable to have their land taken for its payment. These liabilities are separate- and distinct. Neither party could do anything to increase the liability of the other. How could the grantees, by any act of theirs, acknowledge that the mortgage debt was a subsisting indebtedness, so as to subject the defendant to a new liability upon it, when they themselves were not liable on the note? We think the-grantees could do nothing by word or deed to remove the bar of the statute of limitations, so far as the defendant is concerned.”
 

 The contrary view of this entire question is cogently presented in a comprehensive opinion in the case of
 
 Biddle
 
 v.
 
 Pugh,
 
 59 N. J. Eq., 480, 45 A., 626, in which the decision is based upon the following reasoning:
 

 “If the payments by the subsequent grantees were efficient to reduce the amount of interest which came to be due on the bond or to satisfy the principal debt,, after Dr. Pugh had conveyed away the mortgaged premises, it is hard to see why they should fail, after that time, to stay operation of the statute of limitations. The last of these interest payments by subsequent grantees, who covenanted to pay the debt, was made, as stated, within two years before the filing of the bill.
 

 “The crediting upon the bond of payments of interest made by subsequent grantees on account of the mortgage debt was in accordance with their several covenants and with the invariable practice followed by all who receive such payments. It would introduce a new mode of doing business and disturb many established investments were it held that interest payments
 
 *321
 
 made by subsequent purchasers, who had contracted to pay the mortgage debt, .had no application to it, and that all the while that the yearly interest was being annually paid in recognition of the debt and received and credited on the bond, the statutes of limitations were insidiously cutting off the right to collect the principal. The subsequent purchaser, who agreed with the mortgagor or with his grantee to pay the mortgage debt, received an estate in and possession of the mortgaged lands as a consideration for such agreement. Each grantee was, by his covenant, put in privity of obligation as to payment of the debt with every other person who was in anywise bound to pay it. The grantee’s payments of the interest on that debt satisfied it to the extent of those payments,' in accordance with his covenant to pay it and to the benefit of the parties who also were obligated to pay it. The payments were ‘ tenders of money to a person entitled to receive it, by a person liable to pay it’.and operated a.s payments on account of the debt and to keep it alive. Equity will recognize and enforce obligations of persons ultimately liable, so kept alive, although they may not, as between each other, be immediate contractors.
 

 “By taking the covenant from Dr. Pugh, Adams agreed that Pugh should pay the debt, and each payment of interest made by the latter operated as a payment to postpone for 16 years thereafter the operation of the statute of limitations as a defense to the bond. Each successive grantee became in the same way personally liable in equity for the payment of the debt by his covenant in the deed which he accepted. When in turn he became a grantor he exacted from his grantee a like covenant, and the new party undertook the payment of the debt as a primary duty, and thus became in equity the principal debtor, the preceding covenantors becoming sureties. Each of these principal debtors had a right to make the payments of interest on
 
 *322
 
 the debt as they fell due, and the running out of the statute of limitations must be computed from the date of the last of them, which is admitted to have been within two years before the filing' of the bill in this cause. ’ ’
 

 The foregoing precis is sufficient to indicate that this question of law is susceptible of different views, each with some measure of logic to support it. However, after a study of the merits of each theory this court is unanimously of the opinion that the better reasoning is found in the majority rule that the statute of limitations is not tolled as to the mortgagor when a payment on the debt is made by an assuming grantee without the participation of the former.
 

 But the plaintiff does not rely upon case law alone. He insists that in this state the matter is controlled by the cognate provisions of Section 11223, General Code, which read as follows:
 

 “If payment has been made upon any demand founded on a contract, or a written acknowledgment thereof, or a promise to pay it has been made and signed by the party to be charged, an action may be brought thereon within the time herein limited, after such payment, acknowledgment or promise.”
 

 It is the plaintiff’s contention that this statute provides for three contingencies, and that the limiting phrase, “by the party to be charged,” applies to the third alone. This view would mean that under the first and second, provisions the payment or acknowledgment might be made by any other person and nevertheless be binding on the party to be charged. Howrever this court has held otherwise in the case of
 
 Marienthal
 
 v.
 
 Mosler,
 
 16 Ohio St., 566, in which the following reasoning appears:
 

 “In the contemplation of the statute, the part payment of a debt is regarded as evidence of a willingness and obligation to pay the residue, as conclusive as would be a personal written promise to that effect. It
 
 *323
 
 could not, then, have been intended to give this effect to payments other than those made by the party himself, or under his immediate direction. Surely nothing short of this would warrant the assumption of a willingness to pay, equal to his written promise to that effect.”
 

 While, as the plaintiff suggests, the punctuation of the senténce may leave something to be desired, the court still is of the opinion that the General Assembly intended the limiting phrase to apply to the first and second provisions as well as to the third.
 

 In conformity with the foregoing discussion the judgment of the Court of Appeals in favor of the defendant mortgagor, Mrs. Johnson, must be affirmed, inasmuch as 'it is not contended that she participated in or had knowledge of the payments made by the assuming grantees.
 

 But the status of Miss Siegenthaler is vastly different. She contends that when the mortgaged property was deeded to her the purchaser was in fact not herself but one, M. F. Bramley, her employer and brother-in-law, who, as an undisclosed principal, concealed his interest in the transaction and named her as assuming grantee in the deed without her knowledge. This occurred on June 10, 1920, and she testified that she did not learn of the deed until several months later about October 1, of that year. However, there are several important additional facts which clearly render this defense unavailable to her. In the first place, after she learned of the fact that she was the assuming grantee in the deed, she not only took no action nor made complaint but permitted the title to the property to remain in her name for a period of one year until October 1,1921, when she conveyed it to Mr. Bramley’s son. Secondly, during the year she permitted the property to remain in her name she made payments on
 
 *324
 
 the mortgage indebtedness, and the deed recited that the consideration was received from her. In the third place, she continued to make payments thereon for a further period of eleven years until October 1, 1932. It is true that according to her testimony every payment made by her was from the funds of Mr. Bramley, but the important fact is that she not only had knowledge of the payments on the indebtedness but also was the person who actually handled the transactions, and the property never was deeded to Mr. Bramley. Fourth, at no time did she make any statement that any limitation should be placed on the effect of her acts. Furthermore, when she conveyed the property t.o Mr. Bramley’s son she inserted in the deed a clause whereby the grantee assumed and agreed to pay the remaining indebtedness that she had assumed and agreed to pay under the terms of the deed she had accepted and retained. And finally, this experience was not the only one of its kind for her, since in the year 1920 under similar circumstances she knowingly accepted and retained a deed to certain other property and also went to the extent of executing a mortgage thereon. In view of these inescapable facts she cannot now be heard to invoke the statute of limitations on the theory that the payments on the mortgage indebtedness were made without her participation or knowledge. In this connection the plaintiff1 cites the somewhat analogous case of
 
 Glick
 
 v.
 
 Crist,
 
 37 Ohio St., 388, in which this court held that a “payment by a principal debtor which will take a case out of the statute of limitations as to him, will have the same effect as to his surety, who is present for the purpose of seeing that the payment is made and credited, and makes no statement that any limitation shall be placed on the effect of such act.”
 

 Hence, as to the defendant, Miss Siegenthaler, it becomes the duty of this court to reverse the judgment of the Court of Appeals in her favor and affirm
 
 *325
 
 that of the Court of Common Pleas against her. In •other respects the judgment of the Court of Appeals is affirmed.
 

 Judgment modified and affirmed as modified.
 

 Turner, Williams, Matti-iias, Hart and Zimmerman, •JJ., concur.