## Wanamaker & Brown, a corporation, v. John O. Plank.

### Gen. No. 11,372.

1. STATUTE OF LIMITATIONS—*what essential to toll running of.* In order that a payment endorsed upon a note may be effective to toll the Statute of Limitations, there must appear an actual affirmative intention by the debtor to make a payment upon such note.

2. AGENT—*who not, to make new promise tolling Statute of Limitations.* The holder of collateral security placed in his hands coincident with the making of a note thereby secured, is not, in the absence of express authority, such an agent of the debtor as has authority to bind him by a new promise to be implied from a payment made by him upon such note of which the actual debtor is ignorant.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed November 29, 1904.

**Statement by the Court.** This is an action of assumpsit upon a note, which is as follows :

" CHICAGO, Sept. 7, 1889.

$644.

On or before one year after date I promise to pay to the order of Wanamaker and Brown six hundred and forty-four dollars at N. E. Cor. Wabash Ave. and Monroe Str., Chicago (J. C. Carroll), for value received with interest at the rate of six per cent. per annum, having deposited with J. C. Carroll as collateral security, note for $5,000, dated Detroit, Michigan, July 29, 1889, payable five years from date, which I hereby give the said Wanamaker and Brown authority to sell or any part thereof on the maturity of this note or at any time thereafter or before in the event of

said securities depreciating in value at public or private
sale at their discretion without advertising the same or
giving me any notice and to apply so much of the proceeds
thereof to the payment of this note as may be necessary to
pay the same with all interest due thereon, and also to the
payment of all expenses attending the sale of the said
Planks Tavern, and in case the proceeds of the sale of the
said Planks Tavern shall not cover the principal, interest
and expenses, I promise to pay the deficiency forthwith
after such sale.

JOHN O. PLANK."

Said note is endorsed :

" Sept. 13, 1889.    I hold note as stated within.

JOHN C. CARROLL.

May 6, 1893.    Rec'd from Mr. J. C. Carroll, trustee, the
sum of $154.46.

WANAMAKER & BROWN,
By D. Fales."

Mr. Carroll, the holder of the collateral security men-
tioned in the note sued upon, testified that numerous cred-
itors were to share in its proceeds, including appellant, the
claims of such creditors running up almost to the amount
of that collateral note; that appellee called upon him and
asked him to act as trustee of that, as well as of another
$5,000 collateral note not involved in this litigation; that
the witness told appellee he would act as such trustee;
that appellee gave him a list of the creditors; that appel-
lant's name was on the list, and that he handed the list to
his cashier with directions if he ever received any money
to pro-rate it among the different creditors; that the note
sued on was probably brought in to him by the attorney
for appellant, who asked the witness whether he held a
$5,000 note for a number of creditors as trustee; that wit-
ness replied that he did, and thinks the attorney asked him
so to state on the note; that he afterwards received some
money from one Fitzgerald who was trustee of the property
covered by the trust deed securing the collateral notes;
that the money so received was distributed pro-rata among
all the different creditors on the list referred to; that some
time after, he told appellee about the receipt of the money
from Fitzgerald and how it had been distributed, and that

appellee said he thought all the creditors were pretty well satisfied with the way the business had been done. It further appears that the payment endorsed on the note as of May 6, 1893, was made to an attorney acting for appellant and the endorsement was made by him.

WILLIAM ALTON, JR., and CHARLES J. KAVANAGH, for appellant.

A. MORRIS JOHNSON and CHARLES T. FARSON, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This suit was brought April 14, 1902, more than ten years after the maturity of the note in controversy, but within ten years of the time of the payment of $154.46 endorsed thereon May 6, 1893. Appellee pleaded the Statute of Limitations, and as stated in appellant's brief, the only question presented by the record is whether such payment tolled that statute, taking the case out of its operation and removing its bar to the action.

The contention of appellant is that the partial payment endorsed upon the note was made by Carroll in the capacity of agent for appellee, and that its legal effect was to create a new implied promise to pay the debt, which must be held to have arrested the running of the Statute of Limitations. It seems to be thought by both parties that the conclusion to be reached depends largely upon the answer to the question, whose agent was J. C. Carroll in making the payment to appellant and what was its legal effect?

The trial court held that at the time of the payment endorsed on the note appellee had no knowledge that it was about to be made or that Carroll had received any money on the collateral note with which to make it; that in making such payment Carroll acted as trustee for appellant and other creditors and not in pursuance of any directions by the defendant; that he was not acting as agent for the defendant in making the payment and had no authority to make a new promise in behalf of the defendant to pay the balance of the note so as to arrest the statute.

So far as the evidence goes it tends to show that Carroll received the collateral and held it under an agreement that he was to act as trustee for the creditors. Apparently he had no express authority to collect it or disburse proceeds of collection. If the money he received was in part payment of the collateral note, which the evidence does not positively determine, Carroll's action in receiving and disbursing it met the approval of the creditors as well as of appellee, and proves nothing as to his agency. His action in that respect is as compatible with agency for appellant and the other creditors as for appellee. It is true, as argued by appellant's attorneys, that Carroll originally derived whatever authority he had as holder of the collateral note from the act of appellee; but it is equally true that appellant assented to Carroll's exercise of the trust and acquiesced in his manner of performing it. After the collateral had been placed in Carroll's hands, appellee neither had nor attempted to exercise any control over it. He had parted absolutely with so much of it as might be applied in payment of the debts it was deposited with Carroll to secure. Carroll stated in writing over his signature on the back of the note sued upon, that he held the collateral as in said note stated, viz., as "collateral security." Clearly it was for the creditors, not for appellee, that he held such security. The endorsement made by appellant's attorney, and which is relied upon as taking the note out of the statute, credits the payment as "received from Mr. J. C. Carroll, trustee." Should Carroll, however, be deemed to have acted as agent for appellee, such agency would be limited by its scope. This could not have extended beyond receiving and applying the proceeds of the collateral, if indeed he possessed even such authority and was more than a mere holder of the security. It could not under the evidence be fairly considered as including authority to make a payment on appellant's note which would carry with it an implication of a new promise. Placing the security in Carroll's hands "was not understood or intended to be a future promise or a future acknowledgment of a future liability

and a future willingness to pay." Brown v. Latham, 58 N. Hamp. 30–36. A promise made by the debtor to pay a debt arrests the running of the statute, and if a debtor makes a payment upon his outstanding note, the law implies therefrom a new promise to pay the note. It must, however, " be remembered that this new promise can only be implied where the party designedly makes a payment upon the note." Lowery v. Gear, 32 Ill. 383–386. No doubt such new promise will be implied by the law when made by an agent for the debtor by the latter's authority and with his consent, but such authority cannot be implied. There must be an actual affirmative intention by the debtor to make a payment upon a note before a promise can be inferred. Lowery v. Gear, *supra.* We are aware of no principle of law which makes the holder of collateral security placed in his hands coincident with the making of a note thereby secured, an agent of the debtor with authority to bind him by a new promise to be implied from a payment of which the actual debtor is ignorant, having no knowledge as to when it is made or in what amount or that it is to be made at all by the security holder. Such holder of collateral security, if it be conceded that he possesses any authority as agent of the debtor, cannot in the absence of express warrant be presumed to have authority to make acknowledgment of a debt barred by the Statute of Limitations, nor to enter into a new contract springing out of and supported by the original consideration. The bare authority to make the payment does not necessarily imply authority to bind a principal by a new promise to pay. Nor does it matter whether the payment is made before or after the bar of the statute is complete. The rule is the same in either case. Kallenbach v. Dickinson, 100 Ill. 427–446. The views above expressed find support in the following cases: Wolford v. Cook, 71 Minn. 77; Lang v. Gage, 65 N. H. 173; Brown v. Latham, 58 N. H. 30–35; Campbell v. Baldwin, 130 Mass. 199; Smith v. Ryan, 66 N. Y. 352–356. The case of Letson v. Kenyon, 31 Kan. 301–302, cited in behalf of appellant, seems to rest upon the phraseology of a statute of Kansas, and is not, we think, in point.

Appellant urges that the promise contained in the note to pay any deficiency is a controlling feature, but such promise to pay was as much subject to the limitation of the statute as any other part of the note.

Finding no material error, the judgment of the Superior Court must be affirmed. .

*Affirmed.*