David B. Lyman et al., Appellees, v. Harry H. Zearing et al., on appeal of Charles Dickinson, Appellant.

## Gen No. 19,326.

MORTGAGES, § 432*—*when statute of limitations tolled by payment of interest by heirs of mortgagor.* Where lands were mortgaged by an ancestor and after his death interest was paid on the mortgage

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

debt by his heirs, in a suit to foreclose the mortgage, where the owner of the note seeks only a decree *in rem*, the heirs or their grantees are precluded from asserting as a defense that the payment of interest did not toll the statute of limitations as to the interest of the heirs in the land.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Affirmed. Opinion filed June 15, 1914. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On August 26, 1895, William M. Zearing made and delivered his promissory note of even date for $15,000, due five years thereafter, payable to the order of himself and by him indorsed, bearing six and one-half per cent. interest until maturity, payable semiannually, and seven per cent. thereafter. The instalments of interest until maturity were further evidenced by ten interest notes, each for the sum of $487.50. To secure the payment of the said notes Zearing executed and delivered to Huntington W. Jackson, as trustee, a trust deed bearing even date with said note, wherein and whereby he conveyed and warranted to said Jackson certain real estate therein described and wherein David B. Lyman, appellee, was made successor in trust. At the time of the execution of the notes and trust deed, the said Zearing, a widower, was the owner in fee simple of the real estate described in the trust deed. On August 10, 1899, Zearing died intestate, leaving as his only heirs at law four brothers and four sisters, all adults. Zearing at the time of his death was the owner of the equity of redemption in the real estate described in the trust deed, and this equity descended to and became vested in his said brothers and sisters in equal shares as tenants in common, each becoming seized of an undivided one-eighth thereof. On March 1st or 2nd, 1902, the last of the interest notes was paid by certain of the heirs of Zearing, who were then the owners of the equity of redemption to the whole of said real estate.

*See **Illinois Notes Digest**, Vols. **XI** to **XV**, and **Cumulative Quarterly**, same topic and section number.

All these heirs, either personally, or by agent, or by legal representative, participated in said payment of interest in proportion to the respective interest of each in the real estate. This payment was the last one of any kind that was made on said note. In January, 1901, Jackson died and Lyman, the successor in trust, became trustee. Between March 4, 1909 and January 2, 1912, Eugene H. Garnett, through conveyances obtained from the heirs of Zearing, acquired the ownership to the equity of redemption to the whole of said real estate. On January 15, 1912, Garnett and wife conveyed and quitclaimed all their right, title and interest in and to the real estate to Charles Dickinson, appellant, who then became the owner of the equity of redemption to the whole of said real estate. The note became due August 26, 1900, and Lyman and Francis B. Daniels, appellees, as trustees of the Pullman Land Association, the legal holder of said note, and Lyman as successor in trust, filed a bill January 13, 1912, in the Superior Court of Cook county to foreclose the said trust deed. Garnett and Dickinson filed a joint answer to said bill, in which they interposed, as a defense to the proceedings to foreclose, a plea of the Ten-Year Statute of Limitations. The master found that the appellees had a valid and subsisting lien on said real estate for the unpaid principal and interest of said note, together with taxes, special assessments, etc., by the appellees, amounting in all to $30,000.85, and that the appellees were entitled to a foreclosure and sale of the premises. The chancellor approved these findings and entered a decree *in rem* in accordance therewith, and Charles Dickinson, appellant, has prosecuted this appeal from said decree. The death of David B. Lyman, trustee and successor in trust, has been suggested to this court, and on motion his heirs were substituted.

James S. Murray, for appellant.

John M. O'Connor, for appellees.

Mr. Justice Scanlan delivered the opinion of the court.

The master found that all the heirs, either personally, or by agent, or by legal representative, participated in the payment of interest on the note of the ancestor in March, 1902, in proportion to the respective interest of each in the real estate. The decree sustains this finding of the master. The appellant contends that the evidence does not sustain this finding in the decree. After a careful examination of the evidence bearing upon the subject, we are satisfied that there is no merit in this contention.

The appellant contends that as the heirs were not legally obligated to pay the principal or the interest of the note of the ancestor, the payment of the interest on the note by them in March, 1902, was the act of mere volunteers, and that such payment did not stop the running of the statute of limitations, nor did it preclude the appellant from interposing the plea of the statute in the present case.

The appellee contends that the said payment of interest was not the act of mere volunteers; that the heirs of the mortgagor had certain fixed rights in reference to said land and to said note and mortgage; and that the payment of the interest by them tolled the running of the statute of limitations in the present proceedings; and that the said payment precludes the appellant from successfully invoking the statute of limitations in the present proceedings.

It is conceded that neither the heirs nor the appellant are personally liable for the note in question. In fact, the decree in the present case is *in rem* and not *in personam*.

The note became due August 26, 1900. The last interest on the note was paid by the heirs in March, 1902. The bill in the present case was filed January 13, 1912. Was the appellant, who, at the time of the foreclosure, was the owner of the equity of redemption to the whole of the real estate involved in the proceedings, precluded from interposing the statute of limitations in the case, by the conduct of the heirs in paying the interest on the note in March, 1902? We have been referred not only to many cases in this State, but to numerous English and American decisions bearing upon the question now before us for decision. After a careful study of the authorities, we have reached the conclusion that it is possible to decide the question involved by a reference to certain decisions of our own State.

In the case of *Aetna Life Ins. Co. v. McNeely,* 166 Ill. 540, the insurance company, in May, 1895, filed a cross-bill to foreclose a mortgage. The facts in this case are as follows: Henry Fanning, on January 1, 1872, borrowed $1,000 from the insurance company, for which he gave his note secured by a trust deed signed by himself and wife. The note, as extended, became due January 21, 1883. Fanning died intestate November 25, 1881, leaving a widow and certain children. The widow lived on the property as a homestead until her death, February 17, 1892. After the death of Fanning, the widow paid the interest on January 1, 1883, and on November 20, 1882 she paid $300 on the principal. On this last date, she procured an extension of the remaining $700 from January 1, 1883 to January 1, 1888, and she paid the interest annually on the same until January 1, 1887. No steps were taken by the insurance company to enforce the collection of the remaining $700 due as against the land embraced in the trust deed or as against the heirs of Fanning until the filing of the cross-bill. To the cross-bill the children of Henry Fanning pleaded the statute of limitations to the note. The Court held that while the payments made by the widow operated to arrest the running of the

statute of limitations as to any proceeding which might
be instituted under the mortgage as against her inter-
est in the premises, said payments would not toll the
running of the statute as against a proceeding which
might be instituted against the heirs for the purpose of
reaching their interest in the premises. The Court
adds, however: "We are inclined to the opinion that
if they (the children and heirs of Fanning) had made
a payment on the mortgage indebtedness, or promised
payment to the mortgagee, within ten years before the
filing of the cross-bill, such payment or promise would
have arrested the running of the statute of limita-
tions." While this quoted language may be consid-
ered as *obiter,* it is nevertheless illuminating and in-
structive, and it is in accord in principle with the
ruling of the court that the payment of the interest by
the widow tolled the running of the statute as to her
interest in the real estate.

In the case of *Pinkney v. Weaver,* 216 Ill. 185, one
Verkler and wife, on November 24, 1884, conveyed to
Ada Roggy certain land for life with reversion over to
the heirs of her body surviving to their majority, and
in the event of their death prior thereto, to the grant-
ors and their heirs. The conveyance was made sub-
ject to a trust deed executed by the grantors to secure
the payment of their note maturing April 1, 1889, for
$1,200; the interest upon which was thereafter, in 1890
and 1891, paid by the grantee, who had then procured
a conveyance to her from the heirs of the said grantors
of their contingent remainder. More than ten years
after the maturity of the note, in September, 1899,
the holder thereof filed a bill to foreclose the trust
deed. It was held in this case that the payment of
interest by the grantee, Ada Roggy, tolled the running
of the statute of limitations as against both her life
estate and the reversionary estate, and that the deed
made by the master in the foreclosure proceedings con-
veyed the contingent interest of the two minor children
of Ada Roggy, who were born after she paid the an-

nual interest on the note for the years 1890 and 1891. In speaking of the effect of the payment of the interest by Ada, the Court said: "When she made each of these payments of annual interest she was possessed of the life estate and of the reversionary interest in the land. The latter estate was subject to be defeated on the happening of a contingency which might never occur. If such contingency did not happen, the full and complete title would rest in her. She had full right to protect her estate, and all possible interests, from foreclosure and sale under the trust deed by paying the annual interest as it fell due on the note secured by the trust deed. Payments made under such state of case would operate to arrest the running of the statute of limitations as against both the life estate and the reversionary estate. The foreclosure proceedings were regular, and the deed made by the master conveyed the contingent interest of the minor children of Ada to the appellee."

In the case of *Macfarland v. Utz,* 175 Ill. App. 525, one McCandless made a note for $4,500, dated April 18, 1893, payable in five years, and as security for the same gave a trust deed signed by himself and wife, conveying certain property described therein. On April 26, 1896, McCandless and wife conveyed the said property to John N. Crouse, subject to the said trust deed. After the conveyance to Crouse, McCandless made no payments of principal or interest on the said note, but the interest on the note up to January 2, 1905, was paid by Crouse. The defendants in this case, McCandless and wife, set up the ten years' statute of limitations and they insisted that the payments of interest by Crouse did not toll the running of the statute. The theory of the defendants was that no foreclosure could be had under the trust deed apart from the existence of a personal liability, upon the note, against the maker or against one who assumed its payment, and the defendants argued that, as they, the makers of the note, were not personally liable upon

the note at the time of the commencement of the fore-
closure proceedings, no foreclosure could be predicated
upon the note. In passing upon the contention of the
defendants, the Court said: ''By accepting a convey-
ance of the property subject to the trust deed Crouse
did not assume the payment of the note secured by
said trust deed, nor did the extension agreements en-
tered into between Crouse and Nony Williams, the then
holder of said note, on April 18, 1898, and April 18,
1900, whereby Crouse agreed to pay the interest on
said note, or the act of Crouse in thereafter paying
such interest, create a personal liability upon the part
of Crouse to pay the principal of said note. *Ray v.
Lobdell*, 213 Ill. 389; *Scholten v. Barber*, 217 Ill. 148.
The payments of interest upon the note from 1897 to
1905 inclusive by Crouse as the owner of the equity of
redemption in the mortgaged property was made both
for the benefit of himself and for the benefit of plain-
tiffs in error, his grantors, and such payment
of interest served to toll the statute of lim-
itations and to keep alive the debt for the payment
of which the mortgaged property was primarily liable.
The decree of foreclosure here involved is *in rem,* not
*in personam.* * * * By the terms of the trust deed
the land was primarily liable for the payment of the
debt, and Crouse, as the grantee of plaintiffs in
error, having acquired the title to said land subject to
said trust deed, was burdened with the obligation to
pay the debt or suffer the loss of the land by foreclos-
ure and sale. Apart from the payment of interest the
extension agreements entered into between Crouse and
the holder of the note are without special significance.
The payment of interest upon the note is the vital
thing. If such interest had been paid by McCandless,
the statute of limitations could not have been inter-
posed by his grantee, Crouse, to defeat a foreclosure
of the trust deed (*Emory v. Keighan*, 88 Ill. 482), and
we perceive no reason why the payment of interest by
Crouse should not preclude plaintiffs in error from

successfully invoking the statute of limitations in bar of the action." The Supreme Court denied a certiorari in this case.

As affecting the question of the running of the statute of limitations, we are unable to see any difference in principle between a payment of interest by the heirs of a mortgagor and a payment of interest by the grantees of a mortgagor who have not assumed the payment of the mortgage note.

We conclude from the foregoing cases that where an heir is the owner of the equity of redemption to a certain interest in land mortgaged by the ancestor, and the heir pays interest on the mortgage note, he thereby admits that the land, so far as his interest in the same is concerned, is burdened at the time of said payment by the mortgage debt; and in a suit to foreclose the mortgage, where the owner of the note seeks only a decree *in rem,* the heir, or his grantee, is precluded from asserting, as a defense, that the said payment of interest did not toll the statute of limitations, as to the interest of the said heir in the land.

We cannot agree with the appellant that the heirs in the payment of the interest were mere volunteers who waived no rights by this act. The land of the heirs was burdened with the debt of the ancestor, and if the same was not paid the loss of the land by foreclosure and sale would be the consequence. The land was primarily liable for the payment of the debt of the ancestor, and the heirs had the full right to protect their estate in the land from foreclosure and sale by paying the principal or the interest of the note. In case of foreclosure and sale, the heirs were the owners of the equity of redemption. These fixed rights of the heirs were binding on the owner of the note, but the heirs might exercise them, or not, as they saw fit. It would be grossly inequitable to allow the heirs to exercise important rights, in respect to the note and the mortgage, that tended to protect their interest in the property, and that might tend to the injury of the holder

of the note, without imposing some conditions on the heirs in return therefor. When the heirs chose to exercise the right of paying the interest on the note of the ancestor, they waived the right to interpose the defense to a possible future foreclosure proceeding, that the payment of the interest by them did not toll the running of the statute of limitations as to their interest in the land.

The rule we have followed in this case is one that prevails in many of the sister States. A number of respectable authorities hold that where there are several persons interested in the equity of redemption, a payment by one of them keeps alive the right of entry, not only against him, but against all the other owners of the equity. We cite some of the authorities that support this doctrine: Jones on Mortgages (6th Ed.) sec. 1198; *Hollister v. York*, 59 Vt. 1; *Lawton v. Adams*, 13 Ohio Cir. Ct. R. 233. While this last doctrine does not appear to prevail in this State, still the authorities that support it clearly sustain us in the conclusion that we have reached.

We find no error in this record, and the decree of the Superior Court of Cook county will be affirmed.

*Affirmed.*