SCHMIDT, EXR., *v.* HICKS, ADMR.

414

(Decided February 6, 1928.)

*Messrs. Dempsey & Dempsey* and *Messrs. Closs & Closs,* for plaintiff in error.

*Messrs. Hicks & Hicks* and *Messrs. Mallon & Vordenberg,* for defendant in error.

CUSHING, J. Max Schmidt, surviving executor of the estate of Andrew Pfirrmann, prosecutes this action against Ray Hicks, as administrator of the estate of Samuel Hill, to recover on a written acknowledgment of a debt due Pfirrmann from Hill.

The trial court entered judgment for the defendant, and this action is prosecuted to reverse that judgment.

The written instrument, dated October 8, 1888, on which the action is based, reads as follows:

"Cincinnati, O., Oct. 8th, 1888.

"This is to certify that I am indebted to A. Pfirrmann in the sum of thirteen hundred ($1300) dollars. That being my share of loss in a Chicago wheat speculation in which we (Pfirrmann & Myself) were equally interested. But Pfirrmann assuming all responsibility and paying all losses of which my share is as above stated, I hereby agree to take out a policy of Insurance on my life in favor of myself and to assign the same to Mr. A. Pfirrmann to secure him in case of my death before the above amount shall have been paid.                    Saml. Hill."

November 10, 1888, Samuel Hill secured from the New England Mutual Life Insurance Company, of Boston, Mass., a $1,500 endowment policy of life insurance, on his life, payable to himself, due in 31 years from its date, or on his death if that occurred sooner. On the same day he executed an assignment of that policy to Pfirrmann, a copy of which, together with the assent of the insurance company, follows:

"The New England Mutual Life Insurance Co.,
                    "Cincinnati, Nov. 10th, 1888.

"For value received, and subject to the assent of the New England Mutual Life Insurance Co., I hereby assign to Andrew Pfirrmann, of Cincinnati, Ohio, all my right, title, and interest in policy No. 83269 issued by said company, together with all my right, title, and interest, in all distributions made and declared, or to be made and declared, to or under said policy, (except that the cash value of such distributions may be used in payment of premiums by the insured,) to be held as collateral security, for the

amount of his demands, subsisting against me at the maturity of the endowment claim, or at my prior decease, as creditor, surplus, if any, for the benefit of myself, my heirs, and representatives. Saml. Hill.

"Assented to, subject to the rights of all parties interested, and upon condition that all the restrictions in said policy remain in force, and that when the policy is surrendered to the company, or a claim presented under this assignment, the written consent of the assignee, and of the beneficiary above named, and of all other parties in interest, will be required, including, in case of loss, that of the executors or administrators of the assured.

"Boston, Nov. 14, 1888.

"Benj. F. Stevens, P."

Pfirrmann died, and his will was probated February 25, 1892. The settlement of his estate dragged until 1903, when the following judgment was entered on the records of the probate court of Hamilton county, Ohio:

"This cause came on to be heard on the statement heretofore filed herein by the executors and Mrs. Bertha Pfirrman, widow of said decedent, and the proceedings herein, and upon consideration thereof, and for good cause shown, it is hereby ordered that all matters and the account heretofore filed are confirmed.

"It is further ordered on consideration of said statement that a final account herein be dispensed with, the residuary legatee and devisee having waived the same, and consenting thereto, all creditors having been paid.

"It is further ordered that said executors herein

transfer and deliver to said Mrs. Bertha Pfirrman all the property and assets remaining in their hands belonging to this estate, and consisting of uncollected claims.''

The written instrument, first above referred to, was in the possession of Mrs. Pfirrmann, or under her control, from the time of the death of Pfirrmann until 1919, when her daughter turned it over to Max Schmidt, surviving executor, the plaintiff in the court below.

We do not comment on the claim of counsel that the judgment of the probate court was not valid, other than to state that it was a judgment of a court having jurisdiction of the parties and of the subject-matter. It stands unreversed and unmodified and cannot be collaterally attacked.

The written instrument of October 8, 1888, was due and payable on that day. This action was filed June 10, 1922, about 34 years after the obligation of indebtedness was payable. Under Section 11221, General Code, it was barred by the statute of limitations October 9, 1903.

It is claimed that the obligation was revived by a payment made by the insurance company on November 10, 1919. The widow, daughter, and surviving executor of the estate of Andrew Pfirrmann made a claim against the insurance company, and that company paid the executor the sum of $359.10. This payment was made without the knowledge or written consent of Samuel Hill, who was in life at that time, as provided in the company's assent to the assignment.

The policy was assigned to Pfirrmann as collateral security.

The answer pleads the statute of limitations. So far as the record discloses, no demand was ever made on Hill for the payment of this obligation; nor was any suit filed against him to recover judgment on the obligation.

Two questions are presented: Can the executor maintain this action; and, did the payment made by the insurance company, in 1919, revive the obligation which had been barred by the statute of limitations?

Pfirrmann's estate was settled, and the executors were ordered to transfer and deliver to Bertha Pfirrmann all the property and assets remaining in their hands belonging to this estate, consisting of uncollected claims, and the entry recites that all creditors had been paid. The payment of creditors and the transferring of all the assets and property to Bertha Pfirrmann closed the estate. The executor was not the real party in interest; nor was he, as executor, authorized to bring or prosecute this action.

The claim against Hill was not barred by the statute of limitations at the time of the closing of the Pfirrmann estate. Mrs. Pfirrmann owned the claim, but she did not, prior to the date of the running of the statute of limitations, or at any other time, bring an action to recover on that obligation. The claim was not revived by the payment made by the insurance company, unless Hill had authorized the insurance company to act as his agent, or had given his written consent that the company make the payment. The company was discharging its obligation and did not represent or act for Hill, nor did it act on Hill's written consent. If the company did not pay to the person entitled to receive, that is its responsibility. *Smith* v. *Ryan*, 66 N. Y., 352, 23 Am. Rep., 60.

The insurance policy in question, by the terms of the assignment, was made to be held as collateral security for the debt.

In the case of *Barnes* v. *Swift,* 26 W. L. B., 110, 11 Dec. Rep., 321, at page 324, Judge Smith, of the superior court of Cincinnati, used this language:

"And a pledge is said to be made 'where, by contract, a deposit of goods is made a security for a debt, and the right to the property rests in the pledgee, so far as is necessary to secure the debt.' Jones on Pledges, Section 3. And in later years the 'term "collateral security" has come into general use to designate a pledge of negotiable paper, corporate stocks, or other incorporeal personalty, as distinguished from a pledge of corporeal chattels.' Jones on Pledges, Section 1.

"It is quite evident from the definition of a pledge, and from the very nature of the contract itself, that the pledgee acquires a qualified ownership in the property; that he is given, by the owner, the right of possession, either actual or constructive with the right, upon failure of the owner to pay the debt, of selling the property for the purpose of paying it."

The debt in this case had been barred for more than 16 years prior to the payment by the insurance company to the surviving executor, and, under the decision last above quoted, if the collateral security vested only a conditional title in Pfirrmann, the insurance company was not authorized, in the absence of direct and immediate authority from Hill, to pay the money to the executor, or to Mrs. Pfirrmann, the beneficiary under Pfirrmann's will.

As stated, the policy was assigned only as collateral security. In his testimony John T. Pearce,

supervisor of the New England Mutual Life Insurance Company, stated:

"Q. State whether or not Samuel Hill, the beneficiary under said policy, consented in writing, or in any other way, to the payment made by your company, in November, 1919, to Mrs. Pfirrmann, the executor of the Pfirrmann estate, or either of them. A. No."

According to the terms of the assignment, the policy was transferred as collateral security. That means, under the decision above quoted, that upon failure of the owner to pay the debt, the holder might sell the property, or collect the policy for the purpose of paying the debt.

There was no enforceable debt due from Hill to Pfirrmann at the time that this payment was made, and the insurance company, acting on its own behalf, and not as agent of Hill, could not, by its act, revive the debt that had been barred by the statute for more than 16 years prior to such payment.

The authority of the company to make the payment, if it had such, does not imply authority to bind Hill by a new promise to pay; nor does it matter that the payment was made before or after the bar of the statute is complete. *Wanamaker* v. *Plank*, 117 Ill. App., 327. The new promise to pay must be made by the debtor or by some one under his immediate direction.

The principle on which part payment takes a case out of the statute is that the party paying intended by it to acknowledge and admit the greater debt to be due.

The statute of limitations is entitled to the same consideration as other statutes and should not be ex-

plained away. *United States* v. *Wilder*, 13 Wall. (80 U. S.), 254, 20 L. Ed., 681. Numerous other cases might be cited.

Our conclusion is that the plaintiff in the court below was not the real party in interest under Section 11241, General Code, and could not prosecute the action; also, that the insurance company made the payment without any authorization or consent from Hill, and that he was not bound by it, and that the obligation of indebtedness was not revived by that payment.

The judgment of the court of common pleas of Hamilton county is affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and MILLS, J., concur.