Herbert R. Friedlund, Appellant, v. Lawrence
Cunnally et al., Appellees.

Gen. No. 42,259.

Opinion filed May 5, 1943.

FRIEDLUND, LEVIN & FRIEDLUND, of Chicago, for appellant.

JAMES THORPE and FREDERICK C. JONAS, both of Chicago, for appellees.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from that part of the order vacating and setting aside judgment by confession against certain defendants upon five notes secured by junior mortgage. The makers of the notes conveyed title to the real estate, which stood as security for the payment of the notes. Before maturity and by mesne conveyances, all of which were subject to the junior mortgage, the title was conveyed to George W. Stilwell and his wife. Stilwell made payments upon the notes regularly until the date of ma-

turity and for approximately three years thereafter. During the period of his ownership he executed a deed in trust upon certain uses and for certain beneficiaries to the Builders and Merchants State Bank, and the receiver of that bank reconveyed to Stilwell eighteen months later. During this period there was no break in the chain of payments made by Stilwell and no written extension agreements were executed nor did Stilwell execute any written agreement to pay the indebtedness.

The real estate which stood as security for the payment of the notes was later lost by Stilwell through foreclosure of the first mortgage. Judgment was confessed upon the junior mortgage notes more than ten years after the date of maturity but less than ten years after the last payment made by Stilwell. Upon motion and petition, pleading the statute of limitations as a bar to the plaintiff's action, the court vacated the judgment by confession entered, with leave to appear and defend and stand as security. Trial was then had, with testimony taken and argument of counsel received, whereupon the court in due course entered an order upon finding, that judgment by confession be vacated and set aside as to the defendants Lawrence Cunnally and Marie Cunnally and judgment to stand in full force and effect against remaining defendants who did not answer. Plaintiff filed notice of appeal and also filed his appeal bond and perfected this appeal.

From the facts as they appear in the record it appears that on or about March 22, 1926, at Chicago, Illinois, the defendants, appellees, Lawrence Cunnally, Marie Cunnally, and others, signed as maker five judgment notes, all dated March 22, 1926, and each payable to bearer in the sum of $2,570, together with interest thereon at the rate of 6 per cent per annum, payable monthly. All of the notes matured and be-

came due on November 22, 1929 and each and all of the notes were secured by a junior mortgage on real estate located in Chicago, Illinois.

It further appears from the record that on or about the 30th day of June, 1926, the defendants Lawrence Cunnally, Marie Cunnally, and others, by warranty deed conveyed their title to the real estate which stood as security for the payment of the notes to Emil Fagerstrom and his wife, who took title subject to the junior mortgage. By mesne conveyances, all of which were subject to the same junior mortgage, the title to the aforementioned real estate was conveyed to George W. Stilwell and his wife on or about the 12th day of April, 1928.

Subsequent to their conveyance to Emil Fagerstrom no one of the defendants at any time ever made payment on the indebtedness evidenced by their several judgment notes, although defendants' successors in title made frequent payments on account of principal and interest.

On or about the 11th day of March, 1932, George W. Stilwell made his last payment on account of principal and interest to the then holder and owner of the aforementioned five judgment notes. On or about the 5th day of May, 1941 judgment by confession was entered in favor of the plaintiff, in the amount of $16,686.66 and costs. Execution issued on or about May 9, 1941.

It further appears from the record that upon motion of defendants the court entered an order on or about June 4, 1941 to vacate judgment by confession entered with leave to appear and defend, judgment to stand as security, the petition to stand as affidavit of defense, and the execution was stayed.

Subsequently, on or about September 10, 1941, an order was entered giving leave to file a stipulation of facts instanter, and same was filed with the court on that date; that trial was had and testimony was submitted by the plaintiff to prove the dates of payment made upon the indebtedness.

On January 26, 1942, the trial court entered an order upon finding that judgment by confession of May 5, 1941 be vacated and set aside as to defendants and judgment to stand in full force and effect against the remaining defendants.

It appears that the parties stipulated, by written stipulation filed in this cause, that the defendants signed as makers of the five judgment notes on which judgment was confessed. The notes are all dated March 22, 1926, and are each payable to bearer in the amount of $2,570 each, with interest thereon at 6 per cent per annum payable monthly, and that they all matured and became due on November 22, 1929; that all of the notes were secured by a junior mortgage on real estate in Cook county; that on June 30, 1926, the defendants conveyed their title to the real estate which stood as security for the payment of the notes to one Fagerstrom and wife, and that by mesne conveyances the title to the real estate was conveyed to one George Stilwell; that all of the conveyances were subject to the junior mortgage securing the notes.

At the trial of the case George W. Stilwell in the course of his examination testified that he had never had any dealings with the Cunnallys; they never told him at any time to make any payment of principal or interest on the second mortgage; that he made payments after he took over the building. The Cunnallys admitted signing the notes and the ownership of the real estate in 1926; that in 1926 they sold it and thereafter had no further connection with it and paid no principal or interest on the note after they parted with the title and authorized no one to pay principal or interest.

From the briefs that were filed the defendants' theory of the case does not appear in plaintiff's brief, and is briefly stated as follows: Defendants' theory is that payments made by the mortgagors' grantee or successor grantees cannot toll the statute of limitations as to the mortgagors or otherwise affect their

liability in an action on the notes, and even though payments were made by remote grantees of the defendants (mortgagors) no implied authority arises so as to bind the defendants and extend their liability; further, that such remote grantees were not the agents of the defendants (mortgagors) for the purpose of making a new promise which would toll the statute of limitations as against them, and that a partial payment of principal and interest does not arrest the statute of limitations in an action at law on the notes.

It is further suggested by the defendants that the power in the grantees to make payment on the said mortgage is exclusive and different from the right to make a new promise which would bind the defendants; that such payments if made by the grantees might keep the debt alive and, consequently, keep the mortgage lien valid so as to authorize a foreclosure, which is a proceeding *in rem* against the property, but personal liability of the makers of the note cannot be extended or imply a promise on the part of the grantees so as to extend liability of the mortgagors beyond the regular period of limitations.

Defendants further suggest that while there are no findings of the court incorporated in the judgment order, plaintiff assumes certain findings of the court in enumerating the errors relied upon by him for reversal, but that the court properly vacated the confession of judgment upon the notes as to these defendants. That there is no finding by the court that an action *in personam* might not lie, although a suit *in rem* might lie; that as an abstract proposition of law defendants will show that such a situation might well arise.

It appears from the facts that the defendants on March 22, 1926, executed the notes in question in this case and as security therefore executed a junior mortgage on the premises owned by them. Three months thereafter the defendants sold the building, the deeds to the grantees reciting that the property was subject

to the junior mortgage in question. Thereafter the property changed hands a number of times, the last grantee being one George Stilwell who lost the property by foreclosure of a prior mortgage on the premises. All of the conveyances to the successive grantees conveyed the property subject to the junior mortgage securing the notes involved in this proceeding.

It would appear too from the facts that are called to our attention that payments were made on both the principal and interest by the successive grantees, the last payment being made on March 11, 1932, by George Stilwell, the then owner of the premises.

From the facts as they appear in this record there was no contractual relationship that existed between the defendants and the grantees of the property for the payment of the mortgage, either of principal or interest, and that no agreement was made by the last grantee, Stillwell, with the defendants for the payment of principal or interest, and the undisputed fact, as far as it has been called to our attention, is that Stilwell was not acquainted with the defendants Lawrence Cunnally and Marie Cunnally, and had never talked to them about the mortgage.

The undisputed evidence indicates that the defendant Lawrence Cunnally was employed as a motorman on the Rapid Transit Lines, and that he and his wife Marie Cunnally were residents of the city of Chicago continuously since 1929; that they had no knowledge of any payments of either principal or interest by any of the successive grantees, including Stilwell, the last grantee. It is likewise clear that they at no time ratified or confirmed any payments by their grantees or had any knowledge that any such payments were made until judgment was confessed against them fifteen years after the execution of the notes by them and twelve years after the notes fell due.

It appears, as is suggested by the parties in their briefs, that the sole issue is whether the payments of principal and interest by a mortgagee of the mort-

gaged property who purchased such property subject to a mortgage may be imputed to the mortgagors so as to remove the bar of the statute of limitations in an action at law on the notes against the mortgagors.

The first question that is called to our attention is whether the right of the holder of a mortgage to foreclose may remain even though the personal liability on the note may be barred. The defendants in this action, however, draw a very clear distinction between a suit *in rem* and a suit *in personam,* and contend that a bill to foreclose a mortgage lien may be maintained even though personal liability on the notes is barred.

And then 'our attention has been attracted to the statement in the brief of the defendant that where payment on the mortgage was made within ten years prior to the filing of the complaint by a grantee of the mortgagor, such payments serve to keep the debt alive for the purpose of foreclosure and only a decree *in rem* is sought, even though the personal liability on the notes of the mortgage may be barred. It is suggested by these defendants that the statutes of the State of Illinois provide the time when a lien of a mortgage or trust deed ceases by limitation; likewise the time within which foreclosure proceedings may be brought (Ill. Rev. Stat. 1941, ch. 83, secs. 11, 11b [Jones Ill. Stats. Ann. 107.269, 107.270(1)]).

The case of *Macfarland v. Utz,* 175 Ill. App. 525, is cited as an authority by the parties in this litigation. The plaintiff in his brief quotes from this case, to which defendant subscribes, as follows:

"While personal liability on the note as against Archibald W. McCandless was barred by the statute of limitations, the right of cross-complainant to foreclose the trust deed still existed."

In the *Macfarland* case a mortgage note was dated April 1893, made by one McCandless. The note was due five years after date. In March 1896, McCandless

conveyed away the premises and thereafter he paid no interest on the note but his grantee did pay. In September 1907, foreclosure proceedings were brought and McCandless, who was a party defendant, pleaded the statute of limitations. The master in chancery to whom the cause was referred reported that while liability on the note against the maker was barred by the statute of limitations, the right to foreclose the trust deed still existed, and the court said:

"Upon the issues of fact involved, the evidence supports the findings of the master incorporated in the decree."

And again the court said:

"The position assumed by plaintiffs in error [McCandless] is predicated upon the theory that no foreclosure can be had under the trust deed apart from the existence of a personal liability, upon the note against the maker or against one who may have assumed its payment. . . . Such payment of interest served to toll the statute of limitations and to keep alive the debt for the payment of which the mortgaged property was primarily liable. The decree of foreclosure here involved is *in rem,* not *in personam.*"

The plaintiff in his brief erroneously concludes that the Appellate Court contradicted the master's finding of personal liability on the note. The fact is that the master's findings were incorporated in the decree. The decree was affirmed by the Appellate Court and certiorari denied by the Supreme Court.

Our attention is attracted to the case of *Lyman v. Zearing,* 187 Ill. App. 361, where only a decree *in rem* was sought and no personal liability on the notes was involved.

Then again in the case of *Markus v. Chicago Title & Trust Co.,* 373 Ill. 557, the court held that the holder of a note secured by mortgage had three remedies, *viz.*: foreclosure, ejectment, or action *in assumpsit* on

the note. In that case a corporation signed a mortgage note. The corporation was dissolved and no action was commenced on the notes within two years after its dissolution. Subsequently, a suit to foreclose the mortgage was instituted and a defense was urged that since no personal recovery could be had on the notes no foreclosure could be maintained. The court held that the action was one *in rem* and that the dissolution of the corporation did not have the effect of destroying the mortgage lien against the premises, though it did bar, after two years, any action against the corporation itself.

Defendant further suggested and urged that whether the plaintiff could have maintained a foreclosure suit in May of 1941, at the time he confessed judgment, assuming he still had a lien in the property, and whether the defense of the statute of limitations interposed by either the mortgagor or the grantee would have been a good defense to such foreclosure suit, is wholly a moot question and not before this court.

It is stipulated of record by the parties that all of the conveyances of the property from the defendants, beginning with the conveyance from the defendants, to the final conveyance to the last grantee, Stilwell, were subject to the junior mortgage securing the notes in question. There was no assumption clause in any of the deeds. The deed to Stilwell was offered in evidence, but the document itself does not appear in the record nor in the abstract. Likewise, the trust deed executed by the defendants was offered as plaintiff's exhibit 1, but that document does not appear either in the record or in the abstract. However, under the stipulation of facts entered into between the parties, it is admitted that all of the conveyances were subject to the junior mortgage.

Defendants suggest and it appears that when property is conveyed subject to a mortgage, the relation-

ship between the grantor and grantee is akin to that of principal and surety, except that the property in the hands of the grantee becomes primarily liable for the debt and the grantor remains personally liable on the notes. No personal liability is assumed by the grantee. It is not his debt and the only interest that he has in paying it is to protect his property from foreclosure. He has no contractual obligation with the grantor to pay. The grantor on the other hand did not designate the grantee as an agent, either expressly or impliedly, to make payment for him. The grantee under such circumstances has the right to make payments for himself to save his property, but he has no right to make such payments for and on behalf of the mortgagor as an acknowledgment of the mortgagor's debt or a new promise on his part, and it appears too that the holder of the mortgage could not compel Stilwell to pay the indebtedness. Stilwell had not agreed in writing to pay it. He had not assumed the indebtedness, and there are no facts or circumstances in this case from which one might infer a promise on the part of Stilwell to pay and bind the defendants. It appears from the evidence that no authority was ever granted to any of the grantees to make payments. It does not appear that there was any ratification or confirmation, because the defendants did not know of any payments having been made. The grantee, Stilwell, and defendants were not even acquainted and never had any direct dealings.

The law is well settled, as it is suggested, in other jurisdictions, and cases bearing on this question have been passed upon in Illinois. In the late case of *Conerty v. Richtsteig,* 379 Ill. 360, decided in 1942, a deficiency judgment was entered against the mortgagors who sold the property in 1923, the purchaser assuming the mortgage. The mortgage fell due in 1925 and was extended by various extension agreements until 1935. The interest on the mortgage debt was paid by the

purchaser until July 1936, and in September of that year a foreclosure suit was started. The mortgagors had no connection with the property or with the extension agreements after they sold the property in 1923. They contended in the foreclosure suit that the statute of limitations had run as to them and that they were not personally liable on the notes. A deficiency decree was entered against them in the trial court, from which decree an appeal was taken. The decree was affirmed by the Appellate Court. The case was heard in the Supreme Court on appeal from the Appellate Court and the judgment awarding a deficiency reversed. The Supreme Court said:

"Nielsen assumed the payment of the mortgage debt by his acceptance of the deed to the property. This deed was dated February 6, 1923. It is conceded in the record that appellants did not make any payments on the notes after that date. . . . A cause of action on the note against appellants was therefore barred at the time the suit was brought, unless the extension agreements entered into between the holder of the note and Nielsen were binding on appellants."

The court concludes its opinion by stating:

"No payments having been made by them or by their authority on either the principal or interest, and there having been no extension which was effective as to them, no judgment could lawfully be entered against them under the pleadings and upon the facts in the record."

In other jurisdictions the courts have held that payments made by a grantee who has assumed a mortgage do not operate to prevent the running of the statute of limitations against the liability of a mortgagor on his note, and in the case of *Trustees of Alms-House Farm v. Smith,* 52 Conn. 434, which has been cited by the defendants, the court held:

"Where a mortgagor conveys the equity of redemption and ceases to pay interest on the mortgage note, the regular payment of interest by the grantee does not operate to prevent the running of the statute of limitations against the liability of the mortgagor on the note."

In support of this suggestion is the case of *Mack v. Anderson,* 165 N. Y. 529, 59 N. E. 289, in which the court held:

"Where the mortgagor has made no payments on a mortgage debt for twenty years, payments thereon by grantees of a portion of the premises, who have assumed the debt, do not arrest the operation of the statute of limitations in favor of the grantee of another parcel thereof, who has not assumed the payment of the mortgage debt and has neither made nor authorized any payments thereon within that time, and an action to foreclose the mortgage as against him is barred."

To the same effect is the case of *Boughton v. Van Valkenburgh,* 46 App. Div. 352, 61 N. Y. S. 574.

Payments were made in the instant case by Stilwell for three years after the mortgage became due by its terms. The defendants did not ask him to make these payments; neither was Stilwell bound to do so by reason of any contractual relation between the parties. Stilwell made the payments to protect the property from foreclosure and apparently for no other purpose, not to protect the mortgagors, and certainly such payments should not prolong the defendants' liability on the note, which, under the authority of the *Conerty* case is wholly independent of the mortgage.

A further case is the case of *Regan v. Williams,* 185 Mo. 620, 84 S. W. 959, where it was held:

"The payment of interest by the vendee in such case, while the note is yet alive, will not stop the running of the statute of limitations as to the vendor,

because after the assumption of the debt by the vendee the vendor (the maker of the note) is no longer a principal but a surety and they are not thereafter jointly obligors.''

Further, in the case of *Cottrell v. Shepherd,* 86 Wis. 649, 57 N. W. 983, the court in discussing the question of the statute of limitations in a foreclosure suit where a deficiency decree was sought against the maker of the mortgage who had sold the premises subject to the mortgage and whose grantee had made some payments within the statutory period of limitations without the knowledge of the maker of the mortgage, the court said:

''Inasmuch as such payments to remove the bar of the statute must have the effect of an acknowledgment of the debt or a new promise, they should be made by some person who had the right to acknowledge the debt or to make the new promise,—either the mortgagor or his authorized agent. In application to this case, the grantee had the right to make payments for himself to save his land, but had no right to make such payments for and on behalf of the mortgagor, as an acknowledgment of his debt or as a new promise on his part.''

It appears too that all of the Illinois cases bearing on the subject involve foreclosure suits which were suits *in rem,* and the inevitable conclusion and logical reasoning is that while payments by a grantee may operate to keep the debt alive for the purpose of foreclosure where only a decree *in rem* is sought, such payments do not operate to keep alive the personal liability of the mortgagor beyond the statutory period of limitations. *Macfarland v. Utz,* 175 Ill. App. 525; *Pinkney v. Weaver,* 216 Ill. 185; *Lyman v. Zearing,* 187 Ill. App. 361.

It would appear that the law lays down the theory that when mortgaged property is sold subject to a mortgage, the grantee or his successor does not become an agent of the mortgagor with authority to

bind him by a new promise, and the bare authority or power to make payments does not operate to suspend the statute of limitations as to the mortgagor in an action on the notes. Where the property is conveyed subject to the mortgage it is obvious that no express contractual relationship or obligation arises between the parties to pay the debt. This being so, can it be said that an implied agency or authority can be imputed to the grantee? The facts in this case negative any such implication. It would appear that in the case of *Wanamaker & Brown v. Plank,* 117 Ill. App. 327, the court passed upon this question, and that where the mortgaged property is sold subject to a mortgage as we have suggested, the grantee or his successors do not become the agents of the mortgagor with authority to bind him by a new promise. It appears in the *Wanamaker* case that one Plank made a note dated September 7, 1889, to plaintiffs for $644; that he deposited it with one Carroll and also delivered as collateral security another note for $5,000 dated July 29, 1889, payable five years from date. Carroll made a payment on the original note on May 6, 1893. Suit was brought on the note by the payees on April 14, 1902. The statute of limitations was pleaded by the defendant. Plaintiff urged that the payment by Carroll was in the capacity of agent for the defendant and created a new promise to pay the debt. The court said:

"No doubt such new promise will be implied by the law when made by an agent for the debtor by the latter's authority and with his consent, but such authority cannot be implied. There must be an actual affirmative intention by the debtor to make a payment upon a note before a promise can be inferred."

And, further, the court said:

"The bare authority to make the payment does not necessarily imply authority to bind a principal by a new promise to pay."

It would appear that in the case at bar there could be no ratification of the acts of the grantees because the defendants were not cognizant of the fact that payments had been made by any of the grantees. This is undisputed in the record. Neither was there any ratification of the acts of the grantees. It cannot be said that the grantee, Stilwell, was in any sense the agent of the defendants for the purpose of making a new promise. The incidental power of the grantee, Stilwell, to make payments operated to the benefit of the grantee himself; it protected his property from foreclosure, and it was not made for the benefit of the defendants.

It follows that if no liability can be charged against the defendants by reason of any agency, express or implied, the payments of the grantee, Stilwell, or the payments of any of the other grantees could not operate to toll the statute of limitations as to the defendants in the present case. The notes in question fell due in November 1929, and the defendants could have been sued thereon within ten years thereafter, or, within a like period after the debt had been revived by a new promise or acknowledged by themselves or their duly authorized agent. There was no reviving of the debt or acknowledgment by the defendant subsequent to 1926.

It appears from the facts as they are in this record that no agency existed with authority either in fact or by operation of law that effectively extended the liability of these defendants on the notes. The relationship of the mortgagors and the grantees created no obligation on the part of the grantees to make payments where the property was conveyed subject to the mortgage.

Under the numerous authorities that have been cited we believe that it is conclusively shown that the payments made by the grantees in such circumstances did not suspend the operation of the statute of limitations

as to the mortgagors, and that the liabilities on the notes expired ten years after their due date.

It appears from the law as it has been cited, which is unquestionably against the plaintiff, that there is no statute of this State and no decision either in this State or any other State cited by the plaintiff which supports his claim.

The relief which the plaintiff seeks in effect would extend the period of limitation far beyond the time anticipated or contemplated by the legislature. He is asking for something to which he is clearly not entitled, and therefore under the circumstances we are of the opinion that the judgment and order of the trial court were proper and in harmony with the law and should be affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.